17 So.2d 761

**PROTECTIVE LIFE INS. CO. et al. v. LINSON.**

**6 Div. 228.**

Supreme Court of Alabama.

April 29, 1944.

494

Cabaniss & Johnston, of Birmingham, for appellants.

Wm. Conway, of Birmingham, for appellee.

BOULDIN, Justice.

"It is a well-settled rule that a beneficiary in a life insurance policy who murders or feloniously causes the death of the insured forfeits all rights which he may have in or under the policy. This rule is based upon public policy and upon the principle that no one shall be allowed to benefit from his own wrong. * * *." 29 Am.Jur. § 1310.

"It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of the party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had willfully fired." New York Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 600, 6 S.Ct. 877, 881, 29 L.Ed. 997.

Principles so fundamental in the law would seem to require little elaboration.

The beneficiary who feloniously kills the insured commits a crime against society, a crime against the insured, a wrong against the insurer in that by such criminal act the policy is matured before time.

To permit him to recover is to reward him for his evil deed, in that the death benefit is matured aforetime, and his claim thereto made absolute. But for his criminal act he may not have survived the insured.

Such a reward for wrongdoing is a temptation to others. To offer such reward by closing the door against inquiry into the facts when the beneficiary sues for the death benefit is indeed to reflect upon our jurisprudence.

The agreed facts in the case before us disclose that the beneficiary, plaintiff in this suit, has been indicted, tried and convicted of manslaughter in the first degree in the killing of the insured, and is now serving a sentence in the penitentiary for such crime.

In a similar case, the only one before this court involving the precise question, it was conceded the beneficiary, if guilty, could not recover. This court merely remarked:

"The controlling issue of fact on the trial was whether the insured was murdered by the beneficiary. Admittedly, if such was the fact, no action lies on the policy, either by the beneficiary, or by the daughter, who brings this suit, as assignee of the policy under written assignment made after the death of the insured." Sovereign Camp W. O. W. v. Gunn, 227 Ala. 400, 150 So. 491.

Plea 2 in the instant case reads:

"Plaintiff ought not to have and recover in this cause for that the policy of insurance sued on was issued by these defendants on the life of one Mancy Linson, the

husband of the plaintiff, and that the plaintiff herein was named as beneficiary in said policy of insurance and that the plaintiff herein did unlawfully and feloniously take the life of the insured, the said Mancy Linson, and that said policy of insurance matured as a death claim solely by reason of such unlawful and felonious act of the plaintiff herein."

By replication plaintiff set up the incontestability clause in the policy, reading:

"This policy shall be incontestable one year from its date of issue, except for nonpayment of premiums."

The trial court held this replication good as against apt demurrer.

This ruling was fully supported by the decision in Lee v. Southern Life & Health Ins. Co., 19 Ala.App. 535, 98 So. 696. Appellants concede the purpose of this appeal is to overturn that case.

The Lee case was rested on the broad language of this court in construing a similar incontestability clause in the Lovejoy case (Mutual Life Ins. Co. v. Lovejoy), 201 Ala. 337, 78 So. 299, L.R.A.1918D, 860, and on second appeal, 203 Ala. 452, 83 So. 591, wherein the insurer contested liability on the policy on the ground of suicide of the insured while sane, followed in the Overton cases (Supreme Lodge, K. P., v. Overton), 203 Ala. 193, 82 So. 443, 16 A.L.R. 649, and (United Order of the Golden Cross v. Overton), 203 Ala. 335, 83 So. 59, wherein the insured came to his death as a result of his own criminal act, a felonious assault upon public officers while attempting to arrest him, an escaped convict under death sentence.

It was broadly stated in these cases that such an incontestable clause is a covenant against the hazards of litigation, forbidding the setting up of any defense to the cause of action for the death benefit after the death of the insured, who had paid all premiums as per contract, and so construed, held such covenant not against public policy.

We have no occasion to reopen the discussion by a divided court in the Lovejoy cases, supra.

In all these cases the alleged wrongful act of the insured causing his death was set up as a defense against liability on the policy.

Plea No. 2, supra, proceeds on a different legal principle, one which this court, so far as we are advised, has not fully considered.

The plea does not deny the maturity of the cause of action; nor that the insurer is liable therefor, but sets up the felonious slaying of the insured by the beneficiary as a forfeiture, and a bar to her right of recovery as beneficiary. It seeks to strike her name as a beneficiary, and treat the policy as if no beneficiary had been named, the cause of action being in a personal representative of the insured.

■ "* * * it is generally held that although the beneficiary's right to recover under an insurance contract is forfeited by reason of the felonious killing of the insured by the beneficiary, the insurer is not thereby relieved of liability, but is liable to pay the proceeds of the contract to the insured's estate. * * *" 29 Am.Jur. § 1313.

"The fact that [the] public policy prevents the payment of the insurance benefits to the murderer does not void the insurance policy; the liability of the insurer is just the same when death is the result of murder as when it is produced by any other cause, and if there is any person who has a right to the benefits of the policy, his rights will be enforced." Austin v. United States, 7 Cir., 125 F.2d 816, 820.

In that case there was an incontestability clause of similar import to that in the instant case. The beneficiary was denied a recovery.

■ The courts of this country with one accord in most positive terms declare it against public policy to permit a beneficiary who has feloniously slain the insured to recover the death benefit. Many cases do not disclose whether there was an incontestable clause or not. They seem to consider it unimportant. Some expressly declare any contractual provision cutting off such defense would itself be void as against public policy. We may add contracts call for the meeting of the minds of the contracting parties. It is not too much to say no insured ever intended to accumulate a death benefit for one who murdered him, offered a reward for such act.

Without further review we refer to cases cited in Am.Jur., supra; in Austin v. United States, supra; and the following typical cases: Equitable, etc. v. Weightman, 61 Okl. 106, 160 P. 629, L.R.A.1917B, 1210; Swavely v. Prudential Ins. Co., 157 A. 394, 10 N.J.Misc. 1; National Life Ins. Co. v. Hoods Adm'x, 1936, 264 Ky. 516, 94 S.W.2d 1022; Moore v. Prudential Ins. Co.

of America, 1941, 342 Pa. 570, 21 A.2d 42; Merrity et al. v. Prudential Ins. Co. of America, 1933, 110 N.J.L. 414, 166 A. 335; Johnston v. Metropolitan Life Ins. Co., 1919, 85 W.Va. 70, 100 S.E. 865, 7 A.L.R. 823; Smith v. Todd, 1930, 155 S.C. 323, 152 S.E. 506, 70 A.L.R. 1529; Slocum v. Metropolitan Life Ins. Co., 245 Mass. 565, 566, 139 N.E. 816, 27 A.L.R. 1517; Filmore v. Metropolitan Life Ins. Co., 1910, 82 Ohio St. 208, 92 N.E. 26, 28 L.R.A.,N.S., 675, 137 Am.St.Rep. 778; Schmidt v. Northern Life Ass'n, 1900, 112 Iowa 41, 83 N.W. 800, 51 L.R.A. 141, 84 Am.St.Rep. 323; Sharpless v. Grand Lodge A.O.U.W. et al., 1916, 135 Minn. 35, 159 N.W. 1086, L.R.A.1917B, 670.

The basic reasons behind the denial of recovery in such case are so compelling, we now declare the rule that no incontestability clause can invest the beneficiary who has feloniously slain the insured with the right to recover the death benefit, by stipulations closing the door to such defense or otherwise. The decision in the Lee case, supra, is disapproved, and the decisions in the Lovejoy and Overton cases are distinguished from this case on the facts.

Reversed and remanded.

All the Justices concur.